**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **PERNEVLYN C. COGGINS** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil No. WGC-05-248** |
| ) | |
| **FREDERICK E. DAVIS,** ) | |
| **SHERIFF, CHARLES COUNTY** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

**MEMORANDUM OPINION**

Pending before the Court and ready for resolution is Defendant's Motion In Limine

(Document No. 37).  Plaintiff has filed an Opposition (Document No. 42) and Defendant a Reply

(Document No. 43).  No hearing is deemed necessary and the Court now rules pursuant to Local

Rule 105.6 (D. Md. 2004).

Defendant asks the Court to exclude certain evidence and testimony on the grounds that

they are barred by *Hill v. Lockheed Martin Logistics Management, Inc.*, 354 F.3d 277, 291 (4th

Cir. 2004) and further that such evidence would confuse and prejudice the jury.  Specifically,

Defendant moves to exclude:

1.      "All evidence or testimony tending to show, or intended to show, that the

background investigator, Robert Denyer, fabricated comments from Plaintiff's former employers

to sabotage the Plaintiff's prospects for employment."  Document No. 37, at 1.

2.      "All evidence or testimony tending to show, or intended to show, that the head of

personnel, Betsy Leonhard, sent two names to the background investigation unit, or that in other

cases Leonhard had sent only one name for background investigation.  Plaintiff intends to use

this evidence to support her theory that Leonhard departed from past practice as part of a

conspiracy among the Sheriff's subordinates to sabotage Plaintiff's application."  *Id.* at 2.

3.      "All evidence or testimony tending to show, or intended to show, that Julie

Shontere modified or back-dated a December 30, 2002 memorandum memorializing a meeting

with Plaintiff.  Plaintiff has argued that the alleged modification or back-dating of this

memorandum is evidence of a conspiracy among the Sheriff's subordinates to sabotage her

application for employment."  *Id.* at 2-3.

4.      "Any other evidence tending to show, or intended to show, that non-decision

maker subordinates of the Sheriff took actions to sabotage Plaintiff's application for

employment."  *Id.* at 3.

Defendant claims the actions of the subordinates identified above are irrelevant.  The sole

issue for the jury is what the actual decision makers, Major O'Toole and Sheriff Davis, knew and

thought.  *Id.*

In order to resolve this motion, this Court must begin by revisiting *Hill* to determine who,

among members of the Charles County Sheriff's Office, qualifies as an "actual decisionmaker."

> *Reeves* [*v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000)]
> informs us that the person allegedly acting pursuant to a
> discriminatory animus need not be the "formal decisionmaker" to
> impose liability upon an employer for an adverse employment action,
> so long as the plaintiff presents sufficient evidence to establish that
> the subordinate was the one "principally responsible" for, or the
> "actual decisionmaker" behind, the action.

*Hill*, 354 F.3d at 288-89 (citing *Reeves*, 530 U.S. at 151-52).

In the Memorandum Opinion of May 31, 2006 (Document No. 30), the Court wrote, "It is undisputed that Major O'Toole and/or the Sheriff were the actual decision makers." Mem. Op. at 42. The Court found Mr. Denyer was *not* a decision maker and that his acts do not create or impose liability on the Sheriff. *Id.* at 43.

Although the Court found, as undisputed, that Major O'Toole and/or the Sheriff were the actual decision makers, earlier in the Memorandum Opinion, the Court observed, "Sheriff Davis did not see himself as making the decision to hire Mr. Kuminov but instead asserts Major O'Toole made him aware that the [Management and Information Systems] section and Human Resources were choosing Mr. Kuminov." *Id.* at 23. At his October 3, 2005 deposition, Sheriff Davis testified that he has very little involvement in the hiring of civilian employees. Sheriff Davis recounts how Major O'Toole advised him about the applicants for the Systems Administrator position.

> A: As I recall, [Major O'Toole] brought [the applicants' files] into my office and told me that there [were] two applicants that had come to the top of the list and that they were – – the backgrounds had been done and the recommendation was to hire Max and advised me that Ms. Coggins was an African American female, to make me aware of that, and as I – – he may have talked to me briefly about the two applicants. I think it was a limited discussion.
>
> The bottom line was he told me that the recommendation by Eric [Halvorsen] and – – I'm trying to remember whether it was Ross Pitrelli and Betsy or not, but, the bottom line was that all the recommendations [were] to hire Max and he was making me aware of the fact that Ms. Coggins was an African American and I said, put that aside for a minute and put the best qualified person, the best person recommended is Max, and you do the right thing.
>
> Q: Okay. And when you referred to Betsy you're referring to Betsy Leonhard?
>
> A: Yes, I am.

3

Q:  Okay.  Do you remember anything else about your conversation with Major O'Toole?

A:  That was the extent of it.

Q:  Okay.  How long did you meet?

A:  Five minutes.

Document No. 42, Ex. 1 (Davis Dep. 19:22 - 20:19).

In Defendant's Answers to Interrogatories, dated April 18, 2005, in response to Interrogatory No. 2[1], Defendant identified Sheriff Davis' involvement in the selection of Mr. Kuminov and/or the non-selection of Plaintiff as follows:  "Sheriff Frederick E. Davis *accepted* the recommendation to hire Maxym Romanovych Kuminov."  *Id.*, Ex. 4 at 6 (emphasis added). "When a formal decisionmaker . . . rubber-stamps a decision, report, or recommendation actually made by a subordinate, it is not inconsistent to say that the subordinate is the actual decisionmaker or the one principally responsible for the contested employment decision, so long as he otherwise falls within the parameters of the discrimination statute's definition of an employer or agent of the employer."  *Hill*, 354 F.3d at 290.  Upon further consideration, although Sheriff Davis was apparently the *formal decisionmaker*, he was neither the *actual decisionmaker* nor *the one principally responsible for* the selection of Mr. Kuminov and/or the non-selection of Plaintiff.

Who is an agent of the employer, Sheriff Davis?  "Congress wanted courts to look to agency principles for guidance in [the area of employer liability in discrimination cases].  While such common-law principles may not be transferable in all their particulars to Title VII,

---

[1] Identify all persons involved or consulted in the selection of Maxym Romanovych Kuminov and/or the non-selection of Plaintiff Coggins for the position of Systems Administrator, and describe the role and contribution of each person identified.

Congress' decision to define 'employer' to include any 'agent' of an employer, 42 U.S.C. §

2000e(b), surely evinces an intent to place some limits on the acts of employees for which

employers under Title VII are to be held responsible." *Meritor Savings Bank, FSB v. Vinson*,

477 U.S. 59, 72 (1986). The common law agency principles are defined by the Restatement of

Agency. "A master is subject to liability for the torts of his servants committed while acting in

the scope of their employment." *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 756 (1998)

(quoting Restatement (Second) of Agency § 219(1)). An employer may be liable for both the

negligent and intentional torts committed by an employee within the scope of employment. *Id.*

"The Restatement defines conduct, including an intentional tort, to be within the scope of

employment 'actuated, at least in part, by a purpose to serve the [employer],' even if it is

forbidden by the employer." *Id.* (quoting Restatement (Second) of Agency §§ 228(1)(c), 230).

    According to Sheriff Davis, "Human Resources, Administrative Services Division" is the

section primarily responsible for the hiring of individuals at the Charles County Sheriff's Office.

Document No. 42, Ex. 1 (Davis Dep. 11:23 - 12:1). In Defendant's Answer to Interrogatory No.

2, Eric Halvorsen, the manager of Management Information Systems section, recommended that

Mr. Kuminov be hired as the Systems Administrator. *Id.*, Ex. 4, at 4. It is undisputed that the

panel that interviewed the applicants for the position, which included Mr. Halvorsen, ranked

Plaintiff as their top choice for the position. Mr. Halvorsen's opinion subsequently changed

based on what had been reported to him during the background process and when presented

information by Major O'Toole. The other two individuals who recommended Mr. Kuminov be

hired as the Systems Administrator are Betsy Leonhard, Manager, Human Resources Section,

and Ross Pitrelli, Director, Administrative Services Division. Major O'Toole concurred with the

recommendation to hire Mr. Kuminov. *Id.*, Ex. 4, at 5-6. Major O'Toole however was not

*passive* in his concurrence. Major O'Toole presented Mr. Kuminov's and Plaintiff's background

investigation files to Mr. Halvorsen to review. Based on the Plaintiff's background file, Mr.

Havlorsen recommended hiring Mr. Kuminov. "[Individuals] who hold[] 'actual

decisionmaking' power and authority or who ha[ve] 'principal responsibility' for an employment

decision . . . act in a supervisory or managerial capacity as the agents of the employer. It is these

individuals who must possess the requisite discriminatory motivation behind the adverse

employment decision that they make or for which they hold principal responsibility." *Hill*, 354

F.3d at 289. The Court finds Betsy Leonhard, Ross Pitrelli and Major O'Toole are each an agent

of the employer, Sheriff Davis. The Court further finds, for the purposes of this motion, that Ms.

Leonhard, Mr. Pitrelli, and/or Major O'Toole are the actual decisionmakers or the ones who

have principal responsibility for the selection of Mr. Kuminov and/or the non-selection of

Plaintiff for the position of Systems Administrator. Therefore, Defendant's motion to exclude

any evidence or testimony regarding Ms. Leonhard sending two names to the background

investigation unit or any actions by Ross Pitrelli in allegedly sabotaging Plaintiff's application

for employment is **DENIED**.

    With regard to the exclusion of certain evidence and testimony pertaining to Robert

Denyer, Background Investigator, and Julie Shontere, Coordinator, Human Resources Section,

the Court finds that neither Mr. Denyer nor Ms. Shontere is an actual decisionmaker or an

individual who has principal responsibility for an employment decision. Per *Hill*, no liability

may be imposed on an employer for their conduct. "[A]n employer will not be liable for the

improperly motivated person who merely influences the decision. . . ." *Hill*, 354 F.3d at 291.

Thus, Plaintiff is **PROHIBITED** from introducing evidence and testimony to show Mr. Denyer *fabricated* comments from Plaintiff's former employers *to sabotage* Plaintiff's prospect for employment or to show that Ms. Shontere modified or back-dated a December 30, 2002 memorandum as part of a *conspiracy* among personnel at the Sheriff's Office *to sabotage* Plaintiff's application for employment.  The evidence and testimony nevertheless may be introduced as to matters in dispute.

For the foregoing reasons, an Order will be separately entered granting in part and denying in part Defendant's Motion *In Limine*.


November 27, 2006                                                    /s/
_____                    _____
      Date                                                WILLIAM CONNELLY
                                                   UNITED STATES MAGISTRATE JUDGE


7