**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

<table>
<tr><td>PERNEVLYN C. COGGINS</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>Plaintiff,</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>v.</td><td>)</td><td>Civil Action No. WGC-05-248</td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>FREDERICK E. DAVIS,</td><td>)</td><td></td></tr>
<tr><td>SHERIFF, CHARLES COUNTY</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>Defendant.</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
</table>

## MEMORANDUM OPINION

Pending before the Court and ready for resolution is Plaintiff's Motion for Attorneys' Fees and Costs (Document No. 68).  Defendant filed an Opposition (Document No. 70) and Plaintiff a Reply (Document No. 72).  No hearing is deemed necessary, and the Court now rules pursuant to Local Rule 105.6 (D. Md. 2004).

## BACKGROUND

On January 27, 2005, Plaintiff filed a Complaint alleging race and sex discrimination in violation of Title VII of the Civil Rights Act of 1964 by Defendant in failing to hire her for the position of Systems Administrator with the Charles County Sheriff's Office.  *See* Document No. 1.  On May 31, 2006, the Court denied Defendant's motion for summary judgment.  *See* Order of May 31, 2006 (Document No. 31).

This case was tried before a jury between December 5-8, 2006.  On December 8, 2006, the jury returned a verdict in favor of Plaintiff.  The jury found that Plaintiff was denied employment because of her race and denied employment because of her sex.  The jury awarded

Plaintiff $19,158.50 for lost pay and $75,000.00 for emotional damages.  *See* Document No. 63.

On December 19, 2006, the Court issued an Order of Judgment, entering judgment in favor of

Plaintiff and against Defendant in the amount of $94,158.50.  *See* Document No. 64.

## DISCUSSION

### A.    *Attorneys' Fees*

"In any action or proceeding to enforce a provision of . . . title VII of the Civil Rights Act

of 1964 . . . , the court, in its discretion, may allow the prevailing party . . . a reasonable

attorney's fee as part of the costs. . . ."  42 U.S.C. § 1988(b).  It is undisputed that Plaintiff is the

prevailing party and was successful on both of her claims: (a) discrimination on the basis of race

and (b) discrimination on the basis of sex.  Plaintiff argues she is entitled to a fully compensatory

fee award.  Plaintiff seeks an award of $435,490.00[1] in attorneys' fees.

In his Opposition Defendant characterizes Plaintiff's fee request as outrageously

excessive.  Defendant asks the Court to either deny an award of attorneys' fees under 42 U.S.C.

§ 1988 or, alternatively, substantially reduce the fees proportional to Plaintiff's recovery.

"The most useful starting point for determining the amount of a reasonable fee is the

number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."

*Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  Before addressing the issue of the

reasonableness of the hours Plaintiff's counsel spent in representing their client, the Court must

first resolve a fundamental difference between the parties.

---

[1] In her Motion for Attorneys' Fees and Costs, Plaintiff sought $436,549.00 in attorneys' fees.  *See* Document No. 68, at 2.  In her Reply, Plaintiff identified an additional 6.0 hours of attorneys' time which should have been eliminated in the exercise of billing judgment, totaling $1,059.00, and requested that this amount be deducted from her original fee petition.  *See* Document No. 72, at 15.

1.      *What Rate Schedule Should Apply for Attorneys' Fees?*

This Court has issued *Rules and Guidelines for Determining Lodestar Attorneys' Fees in Civil Rights and Discrimination Cases*, otherwise known as Appendix B, as part of this Court's Local Rules.  Footnote 1 of Appendix B identifies which cases are subject to this guidance.

> These rules and guidelines apply to cases in which a prevailing party would be entitled to reasonable attorneys' fees under *42 U.S.C. § 1988(b)* and to *cases brought under Title VII of the Civil Rights Act of 1964*, the Age Discrimination in Employment Act, the Equal Pay Act, the Americans With Disabilities Act, ERISA, the Rehabilitation Act, the Individuals With Disabilities Education Act, the Family and Medical Leave Act, the Fair Credit Report Act and equivalent statutes.  They do not apply to Social Security cases.

Emphasis added.

Plaintiff seeks attorneys' fees at the following rates:

| Attorneys | 2004 Hourly Rates | 2005 Hourly Rates | 2006 Hourly Rates |
|---|---|---|---|
| Bruce A. Fredrickson | $400.00 | $410.00 | $435.00 |
| Jonathan C. Puth | | $325.00 | $345.00 |
| Cedar P. Carlton | | $185.00 | $200.00 |
| Kataryna Lyson | | | $185.00 |
| Geoffrey H. Simpson | | | $115.00 |

*See* Pl.'s Mem. P. & A. Supp. Mot. Atty's Fees & Costs ("Pl.'s Mem."), at 7.  Although Mr. Simpson's customary hourly rate is $185.00, Plaintiff requests Mr. Simpson be compensated at a paralegal rate or $115.00 per hour.  *Id.* n.2.  The compensation rate Plaintiff seeks is the same rate counsel charges to its fee paying customers.  Pl.'s Mem., Puth Aff. ¶ 8(e).

Plaintiff argues a departure from the Appendix B guidelines is warranted because the

3

guidelines do not reflect market rates.  First, the Appendix B guidelines are five and half years old and no longer represent the market rate for attorneys practicing before this Court.  The fees of Plaintiff's counsel fell generally within the guidelines when first issued in 2001 but have risen along with the market in succeeding years.  Pl.'s Mem., at 13.  Second, "the guideline rates are currently the subject of study by a committee of judges and practitioners before this Court, and upward revision[2] of the guidelines is anticipated."  *Id.* at 14.  Third, the guidelines do not control the question of an appropriate rate as reflected in footnote 5 to Appendix B.

> These rates are intended solely to provide practical guidance to lawyers and judges when requesting, challenging and awarding fees. The factors established by case law obviously govern over them. However, the guidelines may serve to make the fee petition less onerous by narrowing the debate over the range of a reasonable hourly rate in many cases.  The guidelines were derived by informally surveying members of the bar concerning hourly rates paid on the defense side in employment discrimination and civil rights cases and adding an upward adjustment to account for the risk of nonpayment faced by a plaintiff's lawyer in the event that her client does not prevail.  The guideline rates also are generally comparable to those applied by the Court in several recent cases involving the award of fees to plaintiffs' counsel after considering affidavits submitted in support of such rates.

Plaintiff has submitted five affidavits and declarations from local practitioners proclaiming the hourly rate charged by Plaintiff's counsel is well within the market rates for litigation in this field[3] for Maryland[4] or Washington, DC since Greenbelt, Maryland is within the

---

[2] After Plaintiff filed her motion for attorneys' fees and costs, on March 1, 2007, this Court issued *Proposed Amendments to the Local Rules for the United States District Court for the District of Maryland*, http://www.mdd.uscourts.gov/news/news/2007revisionswithcover.pdf (last visited May 9, 2007).  This Court is considering amending Appendix B: Rules and Guidelines for Determining Attorneys' Fees.  Any amendments ultimately adopted will go into effect June 1, 2007.

[3] Document No. 68, Ex. C6 (Holland Aff. ¶ 8)

[4] *Id.*, Ex. C1 (Eisenberg Aff. ¶ 9)

Washington, DC market for legal services.[5]  These practitioners claim the hourly rates listed in

the Local Rules are out of sync with the current market and warrant a significant upward

revision.  *See* Document No. 68, Exs. C1 (Eisenberg Aff. ¶ 10), C2 (Zipin Decl. ¶ 6).  Plaintiff

asserts the fees charged by her counsel are reasonable as attested by supporting affidavits and

declarations of local practitioners.  *See id.*, Exs. C2 (Zipin Decl. ¶ 5), C4 (Thatcher Decl. ¶ 9),

C5 (Gagliardo Aff. ¶ 6), C6 (Holland Aff. ¶ 8).  Finally, Plaintiff notes her counsel's fees

"generally fall within the *Laffey*[6] matrix of presumptively reasonable attorneys' fees rates in

Washington, D.C."  Pl.'s Mem., at 8.

In his Opposition Defendant notes the customary rate Plaintiff's counsel charges is far in

excess of the hourly rate recognized by this Court's guidelines.  Although this Court has deviated

from the guidelines when special circumstances exist, Defendant claims no such deviation is

warranted in this case.  "Plaintiff has failed to submit evidence to demonstrate that the issues in

this case were so complex or specialized or that the litigation was so risky that no local counsel

was competent or willing to take on the litigation."  Document No. 70, at 16.  Defendant also

opposes consideration of *Laffey* rates because those rates govern a completely different market.

Moreover, the "use of the *Laffey* Matrix would be particularly unjustified here where the

litigation was not complex, the relief obtained was limited to damages, and the plaintiff was, at

most, only moderately successful."  *Id.*  In short, Defendant contends, under the circumstances of

---

[5] *Id.*, Exs. C2 (Zipin Decl. ¶ 7), C4 (Thatcher Decl. ¶ 10), C5 (Gagliardo Aff. ¶ 6).

[6] "The *Laffey* rates were established by the United States District Court for the District of Columbia in *Laffey v. Northwest Airlines, Inc.*, 746 F.2d 4 (D.C. Cir. 1984) after an extensive survey of rates in Washington, DC. The matrix has been updated annually by the United States Attorney's Office.  *Laffey* rates are routinely accepted as reasonable market rates for complex federal litigation, including Title VII litigation, by District of Columbia Courts, avoiding repetitive and wasteful litigation over market rates in the area."  Pl.'s  Mem. P. & A. Supp. Mot. Atty's Fees & Costs ("Pl.'s Mem."), at 8 n.4.

this case, the hourly rates listed in Appendix B are more than fair.

In her Reply Plaintiff notes Defendant offers little evidence suggesting the fees of Plaintiff's counsel fall outside market rates.  Plaintiff has clearly demonstrated the guideline rates in Appendix B are outdated and thus the Court should not let those rates prevail as claimed by Defendant.  The law, rather than the guidelines, controls.  Finally, Plaintiff rejects Defendant's assertion that Plaintiff seeks adoption of the *Laffey* matrix of fees.  "Since rates vary within any community, Plaintiff urges that her counsel's rates are 'in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.'"  Document No. 72, at 13 (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)).

A reasonable hourly rate is based on compensating attorneys at the prevailing rate in the relevant community.  The relevant community is where the court is located.  *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 175 (4th Cir. 1994).  "While evidence of fees paid to attorneys of comparable skill in similar circumstances is relevant, so too is the rate actually charged by the petitioning attorneys when it is shown that they have collected those rates in the past from the client."  *Id.*  In representing Plaintiff the firm of Webster, Fredrickson & Brackshaw did not bill Plaintiff at its hourly rate because she would not have been able to afford the firm's services.  Instead the firm accepted Plaintiff as a client "on a straight contingent basis requiring a minimal payment of $200 per month toward costs during the litigation. . . ."  Pl.'s Mem., Puth Aff. ¶ 8(k).  Obviously this rate paid by Plaintiff in the past, well below even the rates listed in Appendix B, does not assist the court in determining a reasonable hourly rate.

In assessing the reasonableness of the hourly rate claimed, this Court considers the twelve factors identified in *Johnson v. Georgia Housing Express, Inc.*, 488 F.2d 714 (5th Cir.

1974) which the Fourth Circuit has adopted.  *See Dennis v. Columbia Collection Med. Center, Inc.*, 290 F.3d 639, 652 (4th Cir. 2002).  The twelve *Johnson* factors are: "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Rum Creek*, 31 F.3d at 175.  The Court now considers these factors.

> 2.     *The Johnson Factors*

Plaintiff argues the time and labor expended by her attorneys on this case were reasonable and necessary.  The Court does not agree that *all* hours expended were reasonable and necessary.  As Defendant notes, this case involved a single plaintiff, a single defendant and two counts of discrimination.  Document No. 70, at 2.  The 1,514.40 hours expended on this case are not fully justified.  The Court will thus strike various time entries claimed for compensation. *See infra*.

The second *Johnson* factor is the novelty and difficulty of the questions in the case. Plaintiff characterizes this case as involving "the application of established and evolving legal principles under Title VII to a case in which Defendant asserted as many as a dozen objective and subjective 'legitimate business justifications' for the non-selection of Plaintiff Coggins to the job at issue."  Pl.'s Mem., at 5.  Defendant retorts, "[t]he issues were no more complex than those routinely encountered in Title VII litigation.  No precedent was established.  The case

required no expert witnesses."  Document No. 70, at 2.  The Court concurs with Defendant's

assessment.  The number of objective and subjective legitimate business justifications asserted

by Defendant did not make this case novel nor difficult.  Employers typically cite multiple bases

for their employment decision.  Further, this case did not involve any evolving legal principles.

The Fourth Circuit decision of *Hill v. Lockheed Martin Logistics Management, Inc.*, 354 F.3d

277 (4th Cir. 2004) (en banc), *cert. denied*, 543 U.S. 1132 (2005), delineated who, among the

employees of the Charles County Sheriff's Office, qualified as an actual decisionmaker.

Plaintiff's counsel urged the Court to deviate from *Hill*, which the Court declined to do.

The third factor is the level of skill required to perform the legal services properly.  The

firm of Webster, Fredrickson & Bradshaw specializes in employment law.  Plaintiff undoubtedly

benefitted from retaining such highly qualified counsel.  The Court however disagrees with

Plaintiff that her case required the expertise of seasoned trial lawyers.  Two partners (Mr.

Fredrickson and Mr. Puth) and one associate (Ms. Carlton) performed the vast majority of legal

tasks for this case including all three representing the client at trial.  Although an attorney

unfamiliar with employment discrimination practice may not have been as effective in

representing Plaintiff, this case did not require two highly skilled partners from a firm

specializing in employment law to expend numerous hours on this case, in addition to three

associates.  "The skills required to prosecute this action were no different than those employed in

the litigation of any routine Title VII action for damages."  Document No. 70, at 17.

Regarding the fourth factor, the preclusion of employment by the attorney due to

acceptance of the case, Mr. Puth claims the small firm of Webster, Fredrickson & Brackshaw

"turned down a large number of clients during the course of the litigation for lack of time to even

meet with potential clients, let alone represent their interests.  Indeed, while the time spent on this case was reasonable and necessary, it nonetheless consumed not only workdays but numerous evenings and weekends to achieve the results obtained."  Pl.'s Mem., Puth. Aff. ¶ 8(d). The Court concurs with Defendant's assessment.  "To the extent that this case precluded plaintiff's counsel from accepting other employment, this was only due to the inefficiency of the firm, and its excessive zeal, in its handling of the matter."  Document No. 70, at 17.  Five attorneys (two partners and three associates) worked on Plaintiff's behalf.  It is inefficient for such a small firm to assign so many individuals to a single plaintiff, a single defendant and two counts of discrimination case.

The customary fee charged is the fifth *Johnson* factor.  Defendant opposes the hourly rates sought by Plaintiff's counsel.  "A customary fee is *not* four times the amount of the damages awarded, particularly where plaintiff received only one-seventh of the total back pay claimed and none of the claimed front pay."  *Id*.  The rates Plaintiff seeks, *see supra*, are the same rates her counsel routinely charge fee paying clients.  Plaintiff has submitted affidavits from other practitioners affirming the rates charged by the firm of Webster, Fredrickson & Brackshaw are within the market rates for attorneys in the employment law speciality.

The firm knew when it undertook the representation of Plaintiff that this case would be litigated in the District of Maryland.  The firm was fully aware it was bringing a federal cause of action against a Maryland state agency.  As acknowledged in the Complaint, "[v]enue is proper as the acts complained of herein occurred in Charles County, Maryland."  Compl. ¶ 4.  Webster, Fredrickson & Brackshaw knew or should have known of this Court's rate schedule in Appendix B when it agreed to represent Plaintiff.

The rate schedule in Appendix B provides guidance to judges and lawyers.  When appropriate, this Court may, in its discretion, adjust the compensable hourly rate.  *Smith v. Continental Cas. Co.*, 289 F. Supp. 2d 706, 712 (D. Md. 2003), *vacated by & remanded on other grounds*, 369 F.3d 412 (4th Cir. 2004).  Although there have been occasions where judges in this District have deviated from the rate schedule in Appendix B, *see id.* at 714; *Stone v. Thompson*, 164 F. Supp. 2d 639, 640 (D. Md. 2001), "[c]ourts have looked to the prevailing market rate outside of the local community *in exceptional circumstances where the litigation was complex or the plaintiff was unable to obtain local counsel.*"  *Xiao-Yue Gu v. Hughes STX Corp.*, 127 F. Supp. 2d 751, 767 (D. Md. 2001) (emphasis added).  Despite some of the intimations in the supporting affidavits/declarations, the local community in the District of Maryland does not include Washington, D.C.  The Appendix B rate schedule applies throughout the District of Maryland, whether the acts leading to litigation occur in Baltimore, Greenbelt or the Eastern Shore.

Second, this litigation was not complex.  Third, no evidence has been presented that Plaintiff was unable to obtain counsel in Maryland to represent her.  All of the supporting affidavits/declarations are from attorneys practicing employment and/or civil rights law in Baltimore, Silver Spring, and Greenbelt, Maryland.  Any of these attorneys could have represented Plaintiff and, thus, this case does not involve the exceptional circumstance of Plaintiff being unable to obtain local, *i.e.* Maryland, counsel.  As Defendant observes, "Plaintiff has failed to submit evidence to demonstrate that the issues in this case were so complex or specialized or that the litigation was so risky that no local counsel was competent or willing to take on the litigation."  Document No. 70, at 16.  For all these reasons, the Court declines to

award to Plaintiff's counsel the hourly rate it charges, as a firm in Washington, D.C., to its fee paying clients.[7]  Plaintiff's counsel knew, or should have known, when it agreed to represent Plaintiff that compensation likely would be based on Appendix B.  The firm could have elected not to represent Plaintiff if the firm perceived the rate schedule to be prohibitively low. Cognizant that the rate schedule in Appendix B is advisory and not mandatory, and further cognizant that the Court, in the near future intends to adjust upward the rate schedule, this Court, nonetheless, will apply the current[8] rate schedule in Appendix B.

The sixth *Johnson* factor is whether the fee is fixed or contingent.  Webster, Fredrickson & Brackshaw represented Plaintiff on a contingency basis.  "The representation was undertaken with significant risk of loss for Plaintiff's counsel."  Pl.'s Mem., at 9.  The Court agrees with this statement.

Regarding the seventh *Johnson* factor, Plaintiff concedes this litigation involved no unusual time limitations and the Court finds none.

The eighth *Johnson* factor concerns the amount involved and the results obtained. Plaintiff argues the award of $94,158.50 for economic and non-economic damages was an excellent result, especially the $75,000.00 award for emotional damages, purportedly one of the highest such verdicts in this Court.  In his Opposition Defendant notes Plaintiff was offered $235,000.00 in late November 2006 to settle the case.  "Although the offer was nearly 2 ½ times the amount awarded by the jury, it would not have compensated plaintiff's counsel for the more than $300,000 in legal time already invested.  Plainly, excessive fees drove a case to trial which

---

[7] No documents were submitted showing that other fee paying clients paid the hourly rates charged by Webster, Fredrickson & Brackshaw.

[8] Local Rules as amended August 16, 2004.

could, and should, have been resolved amicably." Document No. 70, at 11.  In her Reply, Plaintiff acknowledges Defendant's $235,000.00 offer "but by that point Plaintiff was prepared for trial and the proposed settlement was not even certain, but was instead subject to later approval by the Board of Public Works.  With trial just days away, Plaintiff rejected the offer and made a counteroffer, which was rejected by Defendant.  Notably, had Defendant offered $235,000 at the July settlement conference, the case could well have settled."  Document No. 72, at 7 (citations omitted).  Considering that the jury awarded only $19,158.50 for back pay and $75,000.00 for emotional damages versus the amount Plaintiff could have received from a settlement, this Court finds the amount awarded was not as excellent a monetary result as Plaintiff proclaims.  But, as Plaintiff observes, she achieved her most important goal: "vindicat[ing] her civil rights and . . . obtain[ing] a determination that Defendant discriminated against her on the basis of race and sex."  Pl.'s Mem., at 9.

There is no dispute[9] concerning the experience, reputation, and ability of Plaintiff's attorneys.  The supporting affidavits and declarations attest to Webster, Fredrickson & Brackshaw's reputation as one of the foremost employment law firms in the Washington, D.C. region.

Regarding the tenth *Johnson* factor, the undesirability of the case, counsel for Plaintiff concede Plaintiff's case was not undesirable.  Counsel notes the case was accepted on a contingency basis, a matter this Court has already considered under the sixth *Johnson* factor.

---

[9] Defendant concedes that Plaintiff's counsel are experienced and highly regarded.  "While the presence of *skilled civil rights lawyers* could have resulted in greater efficiency, *owing to their superior knowledge and experience*, it instead resulted in extravagant billing which would be hard to justify even if plaintiff had won everything she sought."  Document No. 70, at 3 (emphasis added).  *See also id.* at 17 (emphasis added) ("The amounts involved were relatively modest and, *while plaintiff's counsel enjoy a good reputation in the employment bar*, this alone cannot justify the award of such an exorbitant fee.").

Counsel discloses how this relatively rare discriminatory failure to hire case presented challenges.  "Most employment discrimination lawsuits . . . concern current or former employees, who may be challenging a failure to promote, discriminatory wages, adverse workplace conditions such as a hostile environment or failure to accommodate, or termination. Unlike other discrimination cases, therefore, Ms. Coggins (and her attorneys) had scant access to the internal workings of the employer, including access to co-workers or information concerning the decisional process."  Pl.'s Mem., Puth Aff. ¶ 8(j).  The uniqueness of this case does not equate to undesirability.

Plaintiff's counsel concedes the eleventh *Johnson* factor, the nature and length of the professional relationship with the client, would not necessitate an adjustment in the lodestar. The Court agrees.  Plaintiff's counsel represented Plaintiff from the outset of this litigation and has not represented Plaintiff in any prior proceedings.

The final *Johnson* factor is awards in similar cases.  Plaintiff does not identify *any specific cases* similar to her case where her counsel received an award comparable to the amount they seek in this case.  In Plaintiff's Memorandum of Points and Authorities in Support of Her Motion for Attorneys' Fees and Costs, Plaintiff's *entire* discussion is restricted to Appendix B not reflecting market rates.  *See* Pl.'s Mem., at 12-14.   This matter has already been considered and ruled upon under the fifth *Johnson* factor (the customary fee).  In his affidavit, Mr. Puth states the following about the twelfth *Johnson* factor:

> Webster, Fredrickson & Brackshaw has routinely received similar awards of money of attorneys' fees at our customary hourly rates on behalf of plaintiffs in employment discrimination in [sic] cases of this type successfully brought to trial.  Additionally, this Court has on a number of occasions awarded fees at rates that exceed the guideline rates set forth in Appendix B to the Local Rules.

Pl.'s Mem., Puth Aff. ¶ 8(l).

Despite Mr. Puth's assertion, no evidence has been submitted showing similar awards from this Court received by Webster, Fredrickson & Brackshaw. The Court thus declines to adjust the lodestar based on this factor.

  3.  *Which Services Should Be Compensated?*

Having considered the twelve *Johnson* factors and concluding that the rate schedule in Appendix B shall apply, the Court must next determine whether the hours expended are reasonable. "Where a plaintiff has obtained excellent results, [her] attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation. . . ." *Hensley*, 461 U.S. at 435.

  A.  *Case Development, Background Investigation & Case Administration*

Plaintiff seeks compensation for 57.50 hours expended by two senior partners and an associate for case development, background investigation and case administration as follows:

| Attorney | Hours |
|---|---|
| Mr. Fredrickson | 4.50 |
| Mr. Puth | 42.70 |
| Ms. Carlton | 10.30 |

Mr. Fredrickson, one of the founding members of Webster, Fredrickson & Brackshaw, has been a licensed attorney since 1976. Under Appendix B, Mr. Fredrickson is entitled to the highest hourly rate for an attorney admitted to the bar for more than eight years or $275.00. Mr. Puth, a partner at Webster, Fredrickson & Brackshaw, has been a licensed attorney since 1992. With more than eight years' experience (thirteen years when he began representing Plaintiff),

Mr. Puth is entitled to more than $200.00 per hour but not the highest rate of $275.00 per hour. The Court finds a hourly rate of $250.00 is appropriate. Ms. Carlton has been admitted to the bar since 2002. She has less than five years' experience (three years when she began representing Plaintiff). In accordance with Appendix B, an attorney admitted to the bar for less than five years should be compensated between $135.00 and $170.00 per hour. The Court finds a hourly rate of $150.00 is appropriate.

Having determined the compensable hourly rate as well as the reasonable hours expended, Plaintiff's counsel are entitled to compensation for the time spent on case development, background investigation and case administration as follows:

| Attorney | Hours Expended | Hourly Rate | Total |
|---|---|---|---|
| Mr. Fredrickson | 4.50 | $275.00 | $1,237.50 |
| Mr. Puth | 42.70 | $250.00 | $10,675.00 |
| Ms. Carlton | 10.30 | $150.00 | $1,545.00 |

### B. Pleadings

The Court finds the hours expended on pleadings are reasonable. Thus, Plaintiff's counsel shall be compensated as follows:

| Attorney | Hours Expended | Hourly Rate | Total |
|---|---|---|---|
| Mr. Puth | 11.00 | $250.00 | $2,750.00 |
| Ms. Carlton | 1.20 | $150.00 | $180.00 |

### C. Interrogatories, Document Production & Other Written Discovery

Plaintiff seeks compensation for 146.50 hours expended primarily by one partner and an associate as follows:

| Attorney | Hours |
|----------|-------|
| Mr. Fredrickson | .70 |
| Mr. Puth | 81.40 |
| Ms. Carlton | 64.40 |

In his Opposition Defendant notes, "plaintiff's counsel claim 146 hours for written discovery.  Written discovery in this case was handled amicably and without the need for motions.  Yet plaintiff's counsel claim[] this task took more than *three uninterrupted weeks* of attorney time."  Document No. 70, at 9.

The Court agrees with Defendant's assessment that there seems to be an overabundance of time allocated for attorney conferences.  *See* Document No. 70, at 10.  With the amount of time Mr. Puth and Ms. Carlton dedicated to written discovery, the Court finds allowing compensation for *all* attorney conferences (excluding the two sessions claimed by Mr. Fredrickson) is beyond reasonable.  Mr. Puth had thirty-three (33) such conferences with Ms. Carlton, J. Flores and/or L. Correia, totaling 11.00 hours.  Some of these conferences are without question necessary and aids the efficient allocation of time and resources.  However in a case where neither party sought Court intervention to resolve discovery disputes and where discovery was in fact handled amicably, 33 attorney conferences are not justified.  The Court will thus STRIKE half of the time Mr. Puth claims for conferences.  Mr. Puth is entitled to compensation for 5.50 hours for attorney conferences.

Next, it appears inefficient and duplicative to the Court for Ms. Carlton to dedicate 3.30 hours drafting discovery requests on March 7 & 10, 2005, and on March 10, 2005, Mr. Puth spending 1.00 hour drafting discovery requests.  The Court will STRIKE the 1.00 hour claimed

by Mr. Puth.

Having determined the hours reasonably expended, Plaintiff's counsel are entitled to compensation as follows:

| Attorney | Hours Expended | Hourly Rate | Total |
|---|---|---|---|
| Mr. Fredrickson | .70 | $275.00 | $192.50 |
| Mr. Puth | 74.90 | $250.00 | $18,725.00 |
| Ms. Carlton | 64.40 | $150.00 | $9,660.00 |

### D.    Depositions

Plaintiff seeks compensation for 159.70 hours expended for depositions as follows:

| Attorney | Hours |
|---|---|
| Mr. Fredrickson | 1.00 |
| Mr. Puth | 126.10 |
| Ms. Carlton | 32.60 |

Twelve (12) depositions were conducted. Mr. Puth handled ten (10) of the depositions and Ms. Carlton the other two. Those hours are fully compensable. Closer scrutiny is warranted however for other hours expended.

Mr. Puth claims 16.30 hours for travel. The incremental time entries range from 1.00 hour to 1.50 hours. Some of the time entries include conferences. The varying time entries, without conferences, may reflect the differences in the flow of traffic. No explanation however is given for such differences. The Court hereby LIMITS the maximum compensable time to 1.00 hour. Thus, any travel exceeding 1.00 hour is hereby STRICKEN. On September 27, 2005, Mr. Puth claims 1.20 hours [now limited to 1.00 hour] for traveling to LaPlata and later that same day, traveling to D.C, for the depositions of M. O'Toole and J. Crehan. Although Mr. Puth

conducted the deposition of M. O'Toole, Ms. Carlton conducted the deposition of J. Crehan.  It is inappropriate to order compensation at the partner rate when these two depositions were split between a partner and an associate.  Thus for the two hours allowable on September 27, 2005 as travel to LaPlata and to Washington, D.C. regarding the depositions of M. O'Toole and J. Crehan, one hour will be compensable at Mr. Puth's hourly rate ($250.00) and the other hour at Ms. Carlton's hourly rate ($150.00).

Second, regarding reviewing documents, outlining and preparing for depositions, Mr. Puth claims the following hours expended: 13.00 hours for Halvorsen, 3.90 hours for Shontere, 5.80 hours for Pitrelli, 14.40 hours for Cleaveland and Denyer, 11.90 hours for O'Toole and Davis, and 5.20 hours for Leonard.  The time is fully compensable.  Ms. Carlton claims 5.50 hours for Keys and 3.90 hours for Crehan which are fully compensable.  The Court however hereby REDUCES the 12.80 hours claimed by Mr. Puth between August 31 and September 13, 2005 for reviewing and analyzing documents, including Halvorsen's deposition transcript, for further depositions to 6.40 hours.  Considering the amount of time Mr. Puth dedicated for the individual depositions listed above and considering Mr. Puth's experience and skill level, the Court finds Mr. Puth could have accomplished this review and analysis in a shorter period of time.

Having determined the hours reasonably expended, Plaintiff's counsel are entitled to compensation as follows:

| Attorney | Hours Expended | Hourly Rate | Total |
|---|---|---|---|
| Mr. Fredrickson | 1.00 | $275.00 | $275.00 |
| Mr. Puth | 115.40 | $250.00 | $28,850.00 |

| | | | |
|---|---|---|---|
| Ms. Carlton | 33.60[10] | $150.00 | $5,040.00 |

### E.   Motions Practice

Plaintiff seeks compensation for 314.80 hours expended for motions practice as follows:

| Attorney | Hours |
|---|---|
| Mr. Fredrickson | 13.30 |
| Mr. Puth | 204.30 |
| Ms. Carlton | 86.70 |
| Ms. Lyson | 4.60 |
| Mr. Simpson | 5.90 |

The hours expended for motions practice can be further subdivided into discrete sections as follows:

| Type of Motions Practice | Hours |
|---|---|
| 1st Motion to Modify Scheduling Order | 2.30 |
| 2nd Motion to Modify Scheduling Order | 1.60 |
| Opposition to Summary Judgment Motion | 222.20 |
| Review/Analyze Defendant's Reply | 3.00 |
| Motion for Leave to File/Surreply | 15.10 |
| Review Defendant's Opposition to Surreply | .30 |
| Reply in Support of Surreply | 4.70 |
| Review Court's Opinion denying SJ Motion | 1.00 |
| Plaintiff's Motion in Limine | 9.80 |
| Opposition to Defendant's Motion in Limine | 53.40 |

---

[10] Ms. Carlton is compensated for one hour more than she claimed because the Court is compensating her for an hour's travel time for the deposition of Mr. Crehan.

| Trial Memos & Research | .30 |
|---|---|
| Review/Analyze Def.'s Reply | .80 |
| Review Court's Order on Motion in Limine | .30 |

Plaintiff's counsel are entitled to compensation for the hours expended on the first and second motions to modify the scheduling order.  The 222.20 hours counsel claim for the opposition to Defendant's summary judgment motion however require closer scrutiny.

Plaintiff's opposition consists of a 47 page memorandum and 37 exhibits.  Obviously a certain amount of effort was required in crafting the opposition.  From reviewing the 222.20 hours expended on the opposition, the Court finds one of the partners, Mr. Puth, conducted the lion's share of the work.  Mr. Puth drafted, revised and edited the opposition as well as conducted extensive research.  Ms. Carlton performed some similar tasks.  The Court finds Defendant should not bear the total costs of compensating Ms. Carlton for similar tasks she performed when the vast majority of work on the opposition was handled by Mr. Puth.  Ms. Carlton is entitled to compensation for telephone conversations with witnesses and drafting and editing witnesses' declarations.  In addition, she should be compensated for drafting a section of the opposition [not drafted by Mr. Puth] and for some hours claimed for reviewing, analyzing and revising the opposition.  Based on these parameters, the Court hereby STRIKES 20.80 hours claimed by Ms. Carlton for time spent on the opposition to Defendant's summary judgment motion.  She will be compensated for 35.60 hours expended on this task.

Regarding Mr. Puth, he claims twelve (12) conferences with Ms. Carlton about tasks and strategy for Plaintiff's opposition.  Since Mr. Puth generated the vast majority of hours for the opposition, and in light of the Court striking some of the hours claimed by Ms. Carlton, the

Court hereby STRIKES 3.30 hours of conferences.  In reviewing the non-conference time entries claimed by Mr. Puth, between October 27, 2005 and December 12, 2005, Mr. Puth spent 146.40 hours drafting the statements of facts, researching and drafting the opposition to the summary judgment motion, as well as reviewing, revising and editing Plaintiff's opposition.  The time spent is equivalent to three uninterrupted weeks of attorney time (and does not include the hours Ms. Carlton claimed).  Even with a 47 page memorandum and 37 exhibits, Mr. Puth, with his significant experience, should have been able to accomplish this task in less time.  The Court hereby STRIKES twenty (20) hours of the 146.40 hours claimed.

Plaintiff's counsel are entitled to compensation for the 3.00 hours expended reviewing and analyzing Defendant's reply to Plaintiff's opposition.

Plaintiff seeks compensation for 15.10 hours her attorneys spent researching, drafting, revising and editing a motion for leave to file surreply and the surreply.  In reviewing the time entries it is apparent to the Court that Ms. Carlton, the associate, was primarily responsible for this task.  Thus, the researching and drafting performed by Mr. Puth, totaling 3.50 hours, is hereby STRICKEN.  As the partner supervising Ms. Carlton's work, the four conferences Mr. Puth had with Ms. Carlton are appropriate and thus compensable.  All other hours claimed are also compensable.

Plaintiff's counsel claim .30 hour for reviewing and analyzing Defendant's opposition to motion to file surreply, 4.70 hours for researching, reviewing, analyzing, drafting and editing Plaintiff's reply in support of surreply, and 1.00 hour for reviewing and analyzing the Court's opinion denying Defendant's summary judgment motion.  All these hours are compensable.

Next, Plaintiff seeks compensation for the 9.80 hours spent on Plaintiff's motion in

21

limine.  Defendant opposes any compensation.  "Plaintiff's motion in limine was unopposed (and could have been avoided altogether with a phone call)."  Document No. 70, at 8-9.  The Court agrees and thus STRIKES the 9.80 hours claimed.

The last significant category of hours claimed is 53.40 hours for Plaintiff's opposition to Defendant's motion in limine.  Four attorneys (a founding partner, another partner and two associates) worked on this task.  Because Mr. Puth, a partner and highly skilled attorney, was involved with the vast majority of motions practice claimed, the Court finds it unnecessary for Mr. Fredrickson — in addition to Mr. Puth, Ms. Carlton and Mr. Simpson — to review and analyze Defendant's motion in limine, research case law, draft opposition and outline arguments. Mr. Fredrickson claims 10.60 hours; the Court REDUCES the compensable time to 6.00 hours, STRIKING 4.60 hours.  Further, between October 19 and November 1, 2006, Mr. Fredrickson had four conferences with Mr. Puth, Ms. Carlton and/or Mr. Simpson, totaling 2.00 hours, concerning the opposition to motion in limine, litigation strategy and trial preparation.  The Court finds this amount of time  unnecessary, particularly since a partner (Mr. Puth) has a firm grip of the case.  Mr. Fredrickson is entitled to compensation for 1.10 hours on October 31, 2006.  The remaining .90 hour is hereby STRICKEN.

Even after reducing Mr. Fredrickson's compensable time, there are still too many attorneys assigned to this task.  Mr. Puth, Ms. Carlton and Mr. Simpson performed some of the same task, *e.g.*, legal research, reviewing and analyzing the motion, drafting outlines, drafting the opposition, revising and editing the opposition.  Mr. Puth's role, as the partner, should be more as a manager than as a "worker bee."  It is appropriate for Mr. Puth to be compensated for the three conferences with Mr. Simpson or Ms. Carlton.  However, the lion's share of the

compensable time should be awarded to the associates, Ms. Carlton and Mr. Simpson. Therefore, the Court hereby REDUCES the 19.00 hours claimed by Mr. Puth to 5.00 hours.

Plaintiff claims Mr. Simpson expended 3.20 hours to prepare the filing of exhibits to the opposition to the motion in limine.  Although 3.20 hours appears to be a significant amount of time for twelve exhibits, since some of these exhibits are more than 10 pages and because Mr. Simpson will be compensated at the paralegal rate ($90.00/hour), the Court will permit compensation for this task.

It is unclear to the Court why Plaintiff seeks compensation for .30 hour for Ms. Lyson's conference with L. Correia and Mr. Simpson regarding trial memos and research.  Since Plaintiff also seeks compensation for her counsel's "trial preparation and post-trial motions", *see infra*, the Court hereby STRIKES Ms. Lyson's .30 hour.

The Court finds it unnecessary for a founding partner and a partner to review and analyze Defendant's reply in support of a motion in limine.  The Court will STRIKE Mr. Fredrickson's .50 hour and permit Mr. Puth's .30 hour to be compensated.  Finally, counsel is entitled to compensation for .30 hour expended by Mr. Puth reviewing and analyzing the Court's opinion regarding Defendant's motion in limine.

Having determined the hours reasonably expended, Plaintiff's counsel are entitled to compensation as follows:

| Attorney | Hours Expended | Hourly Rate | Total |
|----------|----------------|-------------|-------|
| Mr. Fredrickson | 7.3 | $275.00 | $2,007.50 |
| Mr. Puth | 160.30 | $250.00 | $40,075.00 |
| Ms. Carlton | 64.60 | $150.00 | $9,690.00 |

| Ms. Lyson | 0.00 | $135.00[11] | $0.00 |
| Mr. Simpson | 4.90 | $90.00[12] | $441.00 |

### F.    Attending Court Hearings

Mr. Fredrickson claims 1.50 hours for attending a pretrial conference on November 28, 2006, whereas Mr. Puth, attending the same pretrial conference, claims 1.60 hours.  Since Mr. Fredrickson and Mr. Puth attended the *identical* pretrial conference, the Court hereby STRIKES .10 hour claimed by Mr. Puth.  Their travel time to the pretrial conference differs slightly:  .70 hour for Mr. Fredrickson and .60 hour for Mr. Puth.  Mr. Puth indicates he traveled from the pretrial conference to his office.  Mr. Fredrickson does not identify his place of arrival.  Under "Trial preparation and post-trial motions," Mr. Puth claims .50 hour for travel to his office from the court and travel to the court.  *See* Pl.'s Mem., Puth Aff., Ex. A(7), at 53-55.  Therefore, the attorneys will be compensated .50 hour as travel time.

Having determined the hours reasonably expended, Plaintiff's counsel are entitled to compensation as follows:

| Attorney | Hours Expended | Hourly Rate | Total |
| --- | --- | --- | --- |
| Mr. Fredrickson | 2.00 | $275.00 | $550.00 |
| Mr. Puth | 2.00 | $250.00 | $500.00 |

---

[11] Ms. Lyson was admitted to her first bar in 2005.  As an attorney with less than five years' experience, and only one year of experience when she began work on this case, in accordance with Appendix B of the Local Rules, Ms. Lyson will be compensated at an hourly rate of $135.00.

[12] Plaintiff voluntarily requested Mr. Simpson be compensated at the paralegal rate of $115.00 per hour.  *See* Pl.'s Mem., at 7 n.2.  This amount is higher than the hourly rate of $90.00 in Appendix B.  In accordance with Appendix B, Mr. Simpson will be compensated at an hourly rate of $90.00.

G.       *Trial Preparation & Post-Trial Motions*

Plaintiff seeks compensation for 659.70 hours expended by five attorneys [a founding partner, a partner, two associates and a third associate billed at the paralegal rate] for "trial preparation and post-trial motions" as follows:

| Attorney | Hours |
|----------|-------|
| Mr. Fredrickson | 153.10 |
| Mr. Puth | 202.20 |
| Ms. Carlton | 126.30 |
| Ms. Lyson | 42.20 |
| Mr. Simpson | 135.90 |

The Court agrees with Defendant's critique.  "Most egregiously . . . plaintiff's counsel claim trial preparation time of 659 hours.  This is equivalent of one-third of the total annual hours typically billed by an associate in a major firm.  Put another way, it is the same as dedicating an attorney to unremitting trial preparation for *four months*."  Document No. 70, at 9. Because this case involved a single plaintiff, a single defendant and two counts of discrimination, closer scrutiny of the time entries is warranted.

First, it is inefficient for a small firm to assign five[13] individuals to prepare for this uncomplicated case.  The Court finds the hours expended by Ms. Lyson were unnecessary and could have been accomplished by Ms. Carlton.  The Court therefore STRIKES Ms. Lyson's 42.20 hours claimed for trial preparation.  Ms. Carlton had four conferences with Ms. Lyson totaling 1.20 hours.  Since Ms. Lyson's hours have been determined unnecessary, the Court

---

[13] Technically, a sixth person, L. Correia, and a seventh person, R. White were also assigned because these individuals participated in conferences with Mr. Puth and/or Mr. Fredrickson.

hereby STRIKES 1.20 hours claimed by Ms. Carlton for the conferences with Ms. Lyson.

Besides the five attorneys assigned to this case, two additional individuals, L. Correia and R. White, had minor roles in the trial preparation.  Mr. Puth claims 2.40 hours for the three conferences with L. Correia and one conference with R. White.  The Court STRIKES these hours which should have been excluded in the exercise of billing judgment.  Similarly, the Court STRIKES .30 hour claimed by Mr. Fredrickson for his conference with Mr. Puth and L. Correia.

Between November 20, 2006 and December 7, 2006, Mr. Simpson claims he expended 99.50 of his total 135.90 hours preparing and reviewing exhibits and trial material for trial.  Interestingly, this preparation continued during the first three days of trial (December 5-7, 2006) where Mr. Simpson claims he spent 7.70 hours, 8.50 hours and 6.70 hours respectively.  Mr. Simpson was present during the trial and the Court did not observe him reviewing and preparing exhibits and trial materials in preparation for trial.[14]  Those 22.90 hours are hereby STRICKEN.  Even with this reduction, 76.60 hours remain for assembling 50 exhibits (only 22 of which were included in the Juror Exhibit Binder) and organizing a "high tech" presentation for trial.  The remaining time claimed is still a significant amount.  The Court thus STRIKES another 10.00 hours, reducing the compensable hours to 66.60 hours.  The Court notes Mr. Simpson will be compensated for the 7.30 hours claimed for organizing and making clean copies of trial exhibits, the 9.70 hours for setting up software, and 19.40 hours for research and other administrative tasks.

---

[14] In addition to **7.70 hours** claimed for reviewing and preparing exhibits and trial materials in preparation for trial on December 5, 2006, Mr. Simpson also claims **7.00 hours** for attending and assisting at trial in U.S. District Court *for the same day*.  Similarly, on December 6, 2007, Mr. Simpson claims **8.50 hours** for reviewing and preparing exhibits and trial materials in preparation for trial and **6.80 hours** for attending and assisting at trial in U.S. District Court.

Plaintiff seeks reimbursement for both her counsel's trial preparation as well as post-trial motions.  The matters listed for post-trial motions are (a) .30 hour claimed by Mr. Fredrickson for a conference with Ms. Carlton regarding research about equitable relief, and (b) 12.70 hours claimed by Ms. Carlton for researching, reviewing and analyzing case law on prejudgment interest, injunctive relief, equitable relief and potential diversity training programs, drafting a motion for equitable relief, and a telephone conversation with Plaintiff about post-judgment relief.  Plaintiff did not file a post-trial motion concerning equitable relief or injunctive relief. The Court thus STRIKES .30 hour claimed by Mr. Fredrickson and the 12.70 hours claimed by Ms. Carlton.

Ms. Carlton claims 30.00 hours for reviewing local rules, drafting, revising and editing the joint pretrial order, jury instructions, voir dire, and damages calculation.  The Court notes the joint proposed pretrial order consists of 23 pages.  The Court finds the hours claimed are generous and thus REDUCES the compensable time to 25.00 hours, thus STRIKING 5.00 hours.

Plaintiff's counsel conducted a mock trial through presentation of videotaped deposition testimony in preparation for trial.  Plaintiff asserts she "voluntarily eliminated the vast majority of time for the mock trial."  Document No. 72, at 11 n.6.  For this single plaintiff, single defendant, two counts of discrimination case, with a founding partner, a partner and three associates assigned to the case, conducting a mock trial will not be compensated.  The Court thus STRIKES 23.10 hours claimed by Mr. Fredrickson for work associated with the mock trial presentation between November 8 and 20, 2006 as well as the 6.10 hours claimed by Mr. Puth on November 19 & 20, 2006.

27

Both Mr. Fredrickson and Mr. Puth visited the courtroom on December 4, 2006 to rearrange the courtroom and practice displaying exhibits.  Mr. Puth claims 2.00 hours yet Mr. Fredrickson claims 2.80 hours.  It is the Court's understanding that both counsel were present for the same length of time.  The Court therefore STRIKES .80 hour from Mr. Fredrickson's compensable time.

Next, between October 5, 2006 and December 6, 2006, Mr. Fredrickson had **thirty-four** (34) conferences totaling 23.30 hours.  This is in addition to **seventeen** (17) conferences totaling 6.20 hours claimed by Mr. Puth and six (6) conferences totaling 2.50 hours by Ms. Carlton.  The Court has previously stricken some of these conferences.  *See supra*.  Moreover, the 34 conferences claimed by Mr. Fredrickson is **in addition to** the 97.20 hours claimed in preparation of trial.  In other words, 120.50 of the 153.10 hours claimed by Mr. Fredrickson consisted of conferences and preparation time.  This does not include preparation claimed by Mr. Puth and Ms. Carlton.  The Court previously struck .30 hour for a conference claimed by Mr. Fredrickson with Mr. Puth and L. Correia, leaving a balance of 23.00 hours.  The Court hereby STRIKES an additional nine (9) hours.  Mr. Fredrickson is entitled to compensation for 14.00 hours of conferences.  Finally, Mr. Fredrickson, a founding partner, claims 97.20 hours for trial preparation.  These hours do not include 178.50 hours as trial preparation claimed by Mr. Puth.  Mindful that this case involved a single plaintiff, a single defendant and two counts of discrimination, the Court finds the 97.20 hours claimed by a highly experienced attorney are not justified.  The Court thus STRIKES 10.20 hours.  Mr. Fredrickson is entitled to compensation for 80.00 hours.

Finally, consistent with the above analysis, the Court must determine the hours

28

reasonably expended by Mr. Puth.  First, Mr. Puth had 17 conferences with staff of the firm

totaling 6.20 hours.  The Court previously struck 2.40 hours leaving a balance of 3.80 hours.

The Court has found that Mr. Fredrickson is entitled to compensation for 14.00 hours of

conferences.  It is redundant to award another partner additional time for conferences.  Thus, the

Court hereby STRIKES the remaining 3.80 hours claimed by Mr. Puth.  Second, Mr. Puth claims

he spent 178.50 hours preparing for trial exclusive of the preparation by Mr. Fredrickson, Ms.

Carlton and Mr. Simpson.  This is a significant amount of time dedicated to a case involving a

single plaintiff, a single defendant and two counts of discrimination.  Moreover, Mr. Puth is

highly experienced in employment discrimination law.  For these reasons, the Court hereby

STRIKES 20.50 hours.  Mr. Puth is entitled to compensation for 148.00 hours.

Having determined the hours reasonably expended, Plaintiff's counsel are entitled to

compensation as follows:

| Attorney | Hours Expended | Hourly Rate | Total |
|---|---|---|---|
| Mr. Fredrickson | 102.40 | $275.00 | $28,160.00 |
| Mr. Puth | 169.40 | $250.00 | $42,350.00 |
| Ms. Carlton | 107.40 | $150.00 | $16,110.00 |
| Ms. Lyson | 0.00 | $135.00 | $0.00 |
| Mr. Simpson | 103.00 | $90.00 | $9,270.00 |

### H.    Attending Trial

Plaintiff seeks compensation for 85.90 hours expended for attending trial as follows:

| Attorney | Hours |
|---|---|
| Mr. Fredrickson | 24.30 |
| Mr. Puth | 24.30 |

| Ms. Carlton | 23.50 |
| Mr. Simpson | 13.80 |

Appendix B lists guidelines for compensable and noncompensable time.  Section 2(d)

states, "Only one lawyer for each party shall be compensated for attending hearings."  Footnote

omitted.  Footnote 4 to this section states, in pertinent part:

> There is no guideline as to whether more than one lawyer for each
> party is to be compensated for attending trial.  This must depend upon
> the complexity of the case and the role that each lawyer is playing.
> For example, if a junior lawyer is present at trial primarily for the
> purpose of organizing documents but takes a minor witness for
> educational purposes, consideration should be given to billing her
> time at a paralegal's rate.

In his Opposition Defendant argues the hours billed for attending trial is three times too

high.  "Plaintiff was represented by *three* attorneys at trial, including two senior trial attorneys.

The associate at trial performed little real trial work, essentially handling a single, uncomplicated

witness."  Document No. 70, at 9.  Defendant further contends that Mr. Fredrickson was brought

into the case at the very end and his preparation necessitated duplication of work performed by

others.  *Id.*  Defendant argues Mr. Puth could have handled the trial alone.  In her Reply Plaintiff

observes Defendant dedicated three attorneys and a paralegal to his defense team.  Document

No. 72, at 9.

Considering the nature of the case (one plaintiff, one defendant and two counts of

discrimination), a team consisting of a founding partner, a partner and two associates (though

one is billed at the paralegal rate) is not the most efficient allocation of resources for a small

firm.  Plaintiff would have been well represented by Mr. Puth and Ms. Carlton.  However the

firm of Webster, Fredrickson & Brackshaw apparently believed it a prudent allocation of

resources to assign also Mr. Fredrickson and Mr. Simpson for trial.  Defendant will not be ordered to compensate the hours of all *four* attorneys.  Appendix B of the Local Rules generally permits one attorney to be compensated.  However, in light of the amount of work performed by Mr. Fredrickson at trial, the Court finds he is entitled to compensation along with Mr. Puth.  The hours claimed by Ms. Carlton are hereby STRICKEN.  Mr. Simpson is entitled to compensation for technical assistance provided at trial, at the paralegal rate.

Having determined the hours reasonably expended, Plaintiff's counsel are entitled to compensation as follows:

| Attorney | Hours Expended | Hourly Rate | Total |
|---|---|---|---|
| Mr. Fredrickson | 24.30 | $275.00 | $6,682.50 |
| Mr. Puth | 24.30 | $250.00 | $6,075.00 |
| Ms. Carlton | 0.00 | $150.00 | $0.00 |
| Mr. Simpson | 13.80 | $90.00 | $1,242.00 |

      I.       *ADR*

Plaintiff seeks compensation for 28.50 hours expended for ADR as follows:

| Attorney | Hours |
|---|---|
| Mr. Fredrickson | .50 |
| Mr. Puth | 20.20 |
| Ms. Carlton | 7.80 |

Appendix B to the Local Rules generally limits compensation for attending depositions and attending hearings to one lawyer for each party.  The Court finds this guideline should also apply, with equal force, to ADRs.  The vast majority of hours expended for ADR was done by Mr. Puth.  Ms. Carlton, an associate, assisted Mr. Puth by drafting the confidential settlement

statement, participating in telephone conferences with the client and reviewing and analyzing specific issues. Ms. Carlton's role in ADR, the Court finds, is for educational purposes. Ms. Carlton is entitled to compensation but at the paralegal rate of $90.00 per hour.

For July 7, 2006, Mr. Puth lists a time entry of .80 hour for reviewing and analyzing attorney notes in preparation for settlement conference *and outlining trial strategy*. Similarly, on November 28, 2006, Mr. Puth lists a time entry of 1.30 hours for a telephone conference with the client and Ms. Carlton, in part, regarding settlement proposal *and trial preparation*. Mr. Puth does not identify the exact portion of time dedicated to trial strategy or trial preparation. The time expended for trial strategy and trial preparation is not compensable under ADR. The Court will REDUCE by half these time entries, thus STRIKING 1.00 hour from Mr. Puth's compensable time.

Having determined the hours reasonably expended, Plaintiff's counsel are entitled to compensation as follows:

| Attorney | Hours Expended | Hourly Rate | Total |
|---|---|---|---|
| Mr. Fredrickson | .50 | $275.00 | $137.50 |
| Mr. Puth | 19.20 | $250.00 | $4,800.00 |
| Ms. Carlton | 7.80 | $90.00 | $702.00 |

*J.    Fee Petition Preparation*

Plaintiff seeks compensation for 51.20 hours expended for the preparation of the fee petition as follows:

| Attorney | Hours |
|---|---|
| Mr. Puth | 51.20 |

These hours expended by Mr. Puth can be further subdivided into two categories:

| Category | Hours |
|---|---|
| Pre-trial Fee Petition Preparation | 10.90 |
| Post-trial Fee Petition Preparation | 40.30 |

Presumably, by preparing quarterly fee statements, the time needed to prepare a fee petition post-trial should be substantially reduced.  However, in this instance, Mr. Puth spent almost *four times* the hours on fee petition preparation post-trial versus pre-trial.  The Court therefore STRIKES 20.30 hours claimed by Mr. Puth.

Having determined the hours reasonably expended, Plaintiff's counsel is entitled to compensation as follows:

| Attorney | Hours Expended | Hourly Rate | Total |
|---|---|---|---|
| Mr. Puth | 30.90 | $250.00 | $7,725.00 |

### K.    Total Compensable Attorneys' Fees

Based on the above, Plaintiff's counsel are entitled to the following compensation:

| Phase | Fredrickson | Puth | Carlton | Lyson | Simpson |
|---|---|---|---|---|---|
| Case Dev. | $1,237.50 | $10,675.00 | $1,545.00 | | |
| Pleadings | | $2,750.00 | $180.00 | | |
| Discovery | $192.50 | $18,725.00 | $9,660.00 | | |
| Depositions | $275.00 | $28,850.00 | $5,040.00 | | |
| Motions | $2,007.50 | $40,075.00 | $9,690.00 | | $441.00 |
| Hearing | $550.00 | $500.00 | | | |
| Trial Prep. | $28,160.00 | $42,350.00 | $16,110.00 | | $9,270.00 |
| Trial | $6,682.50 | $6,075.00 | | | $1,242.00 |

| ADR | $137.50 | $4,800.00 | $702.00 | | |
| Fee Petition | | $7,725.00 | | | |
| Total | **$39,242.50** | **$162,525.00** | **$42,927.00** | | **$10,953.00** |

The Court thus AWARDS **$255,647.50** to Plaintiff's counsel as compensable attorneys' fees.

**B.    Costs.**

Plaintiff seeks $18,971.81 for costs by counsel on behalf of Plaintiff.  Unlike Plaintiff's Bill of Costs, *see* Document No. 67, Exs. 1-4, no invoices, cancelled checks or other records supporting the claimed costs are attached to this motion.  Second, Plaintiff seeks reimbursement of $150.00 filing fee and $160.00 process server fee **both** in this motion and in her Bill of Costs.  Plaintiff is entitled to reimbursement **either** by this motion **or** by the Bill of Costs.  Third, Plaintiff seeks reimbursement of depositions, duplication and witness fees **both** in this motion and in her Bill of Costs, though the amounts claimed in this motion are higher than the amounts sought in the Bill of Costs.  In his Opposition Defendant argues that the costs for duplication, depositions and the mock trial deserve the most scrutiny.  Defendant raises specific concerns about the depositions.

> Plaintiff's counsel claim costs of $8,060.70 for deposition costs. These costs reflect the videotaping of the depositions.  *None of these videotapes were used for trial and plaintiff's counsel have made no showing of a risk that any of these witnesses would be unavailable for trial.*  The videotaping of these depositions was an unnecessary expense which should not be shouldered by the taxpayers.  Plaintiff's counsel has separately claimed $2,416.00 for depositions in their Bill of Costs and this is all that should be awarded for this expense.

Document No. 70, at 18.

Without invoices, cancelled checks or other records supporting the claimed costs, the

Court cannot determine whether the depositions, duplication and witness fees claimed in the Bill

of Costs are also claimed as reimbursable costs in this motion.  Moreover, without the supporting

records the Court cannot begin to make a determination of whether these costs are reasonable.

For these reasons, the Court will HOLD IN ABEYANCE Plaintiff's motion for costs pending the

production of records supporting each cost claimed.

## CONCLUSION

A separate order will be entered AWARDING Plaintiff's counsel $255,647.50 as

attorneys' fees.  The motion for reimbursement of costs is HELD IN ABEYANCE pending

receipt of supporting documentation.


May 11, 2007                                          /s/
_____          _____
      Date                                    WILLIAM CONNELLY
                              UNITED STATES MAGISTRATE JUDGE